2015 VT 47A

**Jeffrey Marshall v. State of Vermont, Vermont State Hospital**

[124 A.3d 435]

No. 14-107

Present: **Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Durkin, Supr. J., Specially Assigned**

Opinion Filed May 8, 2015

*Patricia K. Turley* and *Stephen L. Cusick* of *Zalinger Cameron & Lambek, P.C.*, Montpelier, for Plaintiff-Appellee.

*Stephen D. Ellis* and *William J. Blake, IV* of *Ellis Boxer & Blake PLLC*, Springfield, for Defendant-Appellant.

¶ 1. **Reiber, C.J.** This appeal follows a dispute over an order based on a workers' compensation agreement. Claimant injured his back in 2002. Claimant received an 8% whole-person impairment rating, with 6% of that rating referable to a previous injury. Based on this rating, claimant executed an Agreement for Permanent Partial Disability Compensation (Form 22) with his employer, the State, which the Commissioner of the Department of Labor then approved. Six years after the commissioner ordered the award, claimant underwent two more permanency evaluations with different doctors who both used a method that the first doctor had not used. Each of the subsequent evaluations resulted in higher whole-person impairment ratings before consideration of the portion attributable to any pre-existing impairment. Based on the higher ratings, claimant made a claim for additional benefits related to the 2002 injury. Claimant asserted that the award should be modified because his medical condition had worsened, or, alternatively, that the parties had based their Form 22 agreement upon a material mistake of fact. The commissioner ruled in the State's favor. Claimant then appealed to the superior court, which reversed the decision of the commissioner and awarded claimant additional benefits after a bench trial. We vacate the decision of the superior court as to the issues on appeal.

I.

¶ 2. The following facts were found by the commissioner and the superior court and are undisputed, unless noted otherwise. Claimant worked at the Vermont State Hospital as a psychiatric technician and ward aide. His duties involved lifting and dealing with patients who could be combative. Claimant suffered work-related injuries on three separate occasions in 1987, 1992, and

1997. All of these claims related to low back pain in the L5-S1 region of his spine, with radicular symptoms down claimant's left leg. Claimant underwent surgery after each of these injuries and returned to work. After the 1992 injury, claimant's surgeon rated him with a 10% permanent impairment to his spine, and the State began paying permanent partial disability benefits. There was no new rating for the 1997 injury.

¶ 3. In June 2002, claimant assisted a coworker in restraining a self-abusive patient. At one point, the patient lifted both legs off the floor, putting his entire weight on claimant and his coworker. Claimant immediately experienced low back pain, with sciatic pain radiating down both legs. Claimant's symptoms after the 2002 injury differed from the previous three injuries in that low back pain predominated over radicular pain, and he experienced radicular symptoms on both sides rather than just his left side. Following the 2002 injury, claimant did not have surgery and did not return to his job at the hospital and was evaluated for a new work-related injury claim.

¶ 4. In a report issued in 2003, Dr. Maurice Cyr, claimant's treating chiropractor, concluded that claimant had reached a medical end result and assigned a whole-person impairment rating of 5-8% for claimant's lumbar spine injury. On the basis of this report, the parties entered into a Form 22 settlement agreement that identified claimant's lumbar spine impairment as 8% whole person, from which was apportioned 6% on account of claimant's permanent partial disability award for his 1992 injury.[1] See 21 V.S.A. § 648(d) ("An impairment rating determined pursuant to this section shall be reduced by any previously determined permanent impairment for which compensation has been paid."). The commissioner approved the agreement on February 3, 2004, and awarded claimant benefits for the agreed-upon 2% permanent impairment rating.

¶ 5. Claimant continued to experience low back pain and radicular symptoms. In November 2004, an MRI revealed an L4-5 disc herniation. The injuries from 1987, 1992, and 1997 had all involved the L5-S1 area of claimant's spine. An MRI taken in 2002 in connection with the injury did not reveal any disc herniation at the L4-5 level. Claimant sought legal representation and in July

---

[1] Claimant's permanent impairment rating for the 1992 injury was 10% of the spine, or 6% whole person.

2008 consulted with Dr. Sikhar Banerjee. Dr. Banerjee concluded that claimant's worsened symptoms related to the 2002 work injury and to the L4-5 disc herniation despite the results of the 2002 MRI and assessed a 13% whole person impairment rating. Initially, Dr. Banerjee evaluated claimant using the diagnosis-related estimate (DRE) method, the same used by Dr. Cyr in 2002 to evaluate whole person impairment. Subsequently, Dr. Banerjee conducted a second evaluation using the range-of-motion (ROM) method and assessed a whole-person impairment rating of 25%. Dr. Banerjee subtracted the 8% previously rated and paid in accordance with Dr. Cyr's impairment rating, leaving 17% additional whole-person impairment attributable to the June 2002 injury.[2]

¶ 6. The State's expert, Dr. William Boucher, reached a different result. Dr. Boucher concluded that because claimant had prior lumbosacral injuries and multiple surgeries, the ROM method — not the DRE method — was the appropriate evaluation method for determining claimant's impairment for the 2002 injury. Dr. Boucher applied this method to the 2002 injury evaluation conducted by Dr. Cyr and Dr. Banerjee's initial evaluation that used only the DRE method. Dr. Boucher concluded that claimant likely had an 18% whole-person impairment as of May 2002. Dr. Boucher concluded claimant had a 20% whole person impairment in 2010. Based on a series of assumptions about the likely range-of-motion deficits he thought claimant would have experienced after his 1997 surgery, Dr. Boucher concluded that claimant had an 18% whole-person impairment prior to his June 2002 injury. Subtracting 18% from 20%, Dr. Boucher concluded that

---

[2] Dr. Banerjee's "apportionment" analysis is distinct from but consistent with the reduction required by 21 V.S.A. § 648(d). Statutory apportionment analysis requires that an impairment rating "be reduced by any previously determined permanent impairment for which compensation has been paid." The reduction is calculated in the actual award of permanent partial disability benefits pursuant to a Form 22 settlement agreement or litigation. Dr. Banerjee conducted his medical apportionment analysis pursuant to the American Medical Association's *Guides to the Evaluation of Permanent Impairment.* G. Andersson & L. Cocchiarella, American Medical Association, *Guides to the Evaluation of Permanent Impairment,* 11 (5th ed. 2001) [hereinafter *AMA Guides*]. Medical apportionment analysis "represents a distribution or allocation of causation among multiple factors that caused or significantly contributed to the injury or disease and resulting impairment." *Id.* The evaluating physician — not the hearing officer or judge — does this apportionment with the goal of determining how much of a claimant's permanent impairment was caused by an injury for which he or she is seeking compensation.

claimant's impairment from the 2002 injury gave rise to an additional whole-person impairment of 2%. Using an entirely different method, Dr. Boucher reached a result that agreed with Dr. Cyr's rating of 2% relating to the 2002 injury. Dr. Boucher's result — 2% impairment attributable to the 2002 injury — was consistent with the Form 22 agreement executed by the parties and approved by the commissioner.[3]

¶ 7. Given the differences in the methods used and results of the three whole-person impairment evaluations, claimant sought an award of additional benefits relating to the 2002 injury. Claimant argued to the commissioner that the award in the 2004 Form 22 agreement should be modified because his condition had worsened. Alternatively — and primarily at issue on appeal — claimant argued that the Form 22 agreement should be reformed under the mutual mistake doctrine and that Dr. Banerjee's rating should be substituted for Dr. Cyr's rating, as Dr. Cyr should have used the ROM method rather than the DRE method in making the determination upon which the Form 22 was based. The commissioner concluded that claimant had failed to prove that his worsened condition after 2008 related to his 2002 injury. Thus, the commissioner decided in favor of the State and declined to modify the award on the ground of a change in condition.

¶ 8. The commissioner also decided in favor of the State with regard to claimant's alternate argument that the Form 22 approved in 2004 was based on a material mistake of fact. The commissioner noted "that the 'material portion' of the Form 22 at issue here concerns only the impairment rating to which the parties agreed — 8% whole person — not the methodology used

---

[3] Dr. Boucher's method contrasts with Dr. Banerjee's method of accounting for claimant's prior injuries, which was consistent with — albeit distinct from — the statutory apportionment analysis in 21 V.S.A. § 648(d). Dr. Boucher made assumptions about claimant's presumed impairment prior to the June 2002 injury without regard to whether claimant had previously received an impairment rating that reflected any pre-2002 impairment, and without regard to whether claimant had ever received compensation for that degree of impairment. The result of Dr. Boucher's analysis agreed with Dr. Cyr's original impairment rating with regards to the 2% referable to the 2002 injury. Both the commissioner and the superior court took issue with Dr. Boucher's analysis. The commissioner observed that even while Dr. Banerjee's method resulted in "a less than ideal estimate," Dr. Boucher's method seemed "particularly imprecise." Accordingly, the commissioner found that Dr. Banerjee's evaluation "comports more closely with the [AMA Guides'] directives." The superior court found "that Dr. Boucher improperly speculated about what the impairment in ROM was before the 2002 injury."

to derive it." Neither claimant nor the State introduced any evidence of what claimant's impairment rating would have been in 2002 had he been evaluated using the ROM method at that time. As the commissioner stated, based on the evidence presented at the administrative hearing, "[i]t is impossible to know . . . whether the 8% permanency to which the parties ultimately agreed would have been higher, or lower, or perhaps just the same." The commissioner added that even if Dr. Cyr's interpretation of the *AMA Guides* were mistaken, she could not characterize such an error as a "mistake of fact" given how the process combines objective data with an individual physician's clinical judgment to produce an estimate.

¶ 9. Claimant appealed the commissioner's decision in favor of the State to the superior court. The commissioner certified two questions to the superior court: (1) whether claimant was entitled to additional medical benefits referable to his 2002 injury; and (2) whether claimant was entitled to additional permanent partial disability benefits as a consequence of the 2002 injury, and if so, based on what impairment rating. During the superior court proceedings, the State moved for partial summary judgment, arguing that the superior court could not review the commissioner's conclusion that a mistaken permanent impairment rating is not a "material mistake of fact" that is a ground for reforming a Form 22 agreement. The superior court denied the motion, and rendered its final merits ruling in February 2014. The court agreed with the commissioner that claimant was not entitled to benefits related to the L4-5 disc herniation, finding that the L4-5 disc herniation was not related to the 2002 injury. However, the court ruled that claimant is entitled to ongoing medical expenses relating to his ongoing back and leg pain, as well as the numbness in his left foot.

¶ 10. The superior court also decided in claimant's favor regarding additional permanent partial disability benefits, concluding that the Form 22 that served as the basis of the commissioner's 2003 award should be reformed under the mutual-mistake doctrine. The court was persuaded that because Dr. Cyr used the DRE instead of the ROM evaluation method, the 8% impairment rating given by Dr. Cyr was a material mistake of fact that justified reforming the Form 22 agreement. The court compared the impairment ratings given by Dr. Boucher and Dr. Banerjee, and found the proper impairment rating to be 22%. Subtracting the 6% whole

person impairment from the 1992 injury for which claimant was previously compensated, the court found that claimant's impairment rating with respect to the 2002 injury should be 16%. The court awarded claimant benefits based on that figure, minus the 2% which he had already been paid for the 2002 injury.

## II.

¶ 11. Our review of the superior court's legal conclusions is "nondeferential and plenary." *Thompson v. Dewey's S. Royalton, Inc.*, 169 Vt. 274, 276, 733 A.2d 65, 67 (1999) (quotation omitted).

¶ 12. The State argues that the superior court did not have "subject matter jurisdiction to disregard the commissioner's legal ruling that the [F]orm 22 is a final and binding resolution of the permanent impairment rating and may not be rescinded on the basis of new medical opinions respecting the rating." The workers' compensation statute confers subject matter jurisdiction over appeals from awards by the commissioner. 21 V.S.A. §§ 670-672; *Stoll v. Burlington Elec. Dep't*, 2009 VT 61, ¶ 5, 186 Vt. 127, 977 A.2d 1282 (citing 21 V.S.A. § 671). The Legislature has bifurcated the process for these appeals: the superior court may review questions of fact or mixed questions of fact and law. 21 V.S.A. §§ 670-671. Dissatisfied parties may appeal only pure questions of law directly to this Court. *Id.* § 672. The certified question in this case involves a mixed question of law and fact.

¶ 13. ■■ A claimant's legal entitlement to permanent impairment benefits is based on a factual situation — his or her medical condition, which forms the basis for his or her impairment rating. Expert testimony from medical professionals — including their opinions as to what a claimant's impairment rating should be — is evidence that underlies the legal issue of whether that claimant should receive benefits based on that impairment rating. Both objective measurements and clinical judgment inform the impairment rating. See *AMA Guides* at 2, 10, 18 (defining impairment and describing physicians' role in evaluating impairment). Given the intertwining of fact and law in the certified question, it was appropriate for the superior court to review the commissioner's decision in a de novo retrial. *Travelers Indem. Co. v. Wallis*, 2003 VT 103, ¶ 11, 176 Vt. 167, 845 A.2d 316 ("[R]eview under 21 V.S.A. § 670 is de novo." (citing *Pitts v. Howe Scale Co.*, 110 Vt. 27, 35, 1 A.2d 695, 698 (1938))).

## III.

¶ 14. The State's argument about subject matter jurisdiction is, in effect, a challenge to the merits of the superior court's decision — specifically, its conclusion of material mistake of fact in the Form 22 agreement and the way it applied the workers' compensation rule that covers Form 22 agreements. The rule states that "[o]nce executed by the parties and approved by the Division, these forms shall become binding agreements and absent evidence of fraud or material mistake of fact the parties shall be deemed to have waived their right to contest the material portions thereof." Workers' Compensation Rules § 17.0000, 3 Code of Vt. Rules 24 010 003 - 14, available at http://www.lexisnexis.com/hottopics/codeo fvtrules; see also *id.* § 17.2000 ("Form 22 - Permanent Partial Disability Agreement. This form shall be used in all cases in which the employee is deemed to have suffered a permanent impairment as a result of a work-related injury.").

¶ 15. The superior court was required to exercise "traditional deference to the Commissioner's interpretation of workers' compensation statutes." *Brown v. W.T. Martin Plumbing & Heating, Inc.*, 2013 VT 38, ¶ 18, 194 Vt. 12, 72 A.3d 346. Such deference is appropriate where the superior court must interpret a rule promulgated under the workers' compensation statute. See Workers' Compensation Rule § 17.0000 (including Form 22 with forms "used to satisfy the requirements of 21 V.S.A. §§ 662(a) and 703"). This case involves a highly specialized subject matter within the commissioner's expertise.

¶ 16. A party seeking to set aside an approved Form 22 must meet a very high burden under Rule 17. The commissioner has held that once a Form 22 agreement is executed, the impairment rating "[is] no longer subject to discussion or dispute by either party." *Coronis v. Granger N., Inc.*, No. 16-10WC, slip op. at 5 (Apr. 27, 2010), http://labor.vermont.gov/wordpress/wp-content/uploads//CoronisMSJ.pdf. Upon approval by the commissioner or her designee, a Form 22 agreement "becomes a binding and enforceable contract." *Lushima v. Cathedral Square Corp.*, No. 38-09WC, slip op. at 6 (Sept. 29, 2009), http://labor.vermont. gov/wordpress/wp-content/uploads//LushimaDecision-1.pdf. Preventing parties from disputing an impairment rating after an agreement has been approved "give[s] the Form 22 the certainty that Workers' Compensation Rule 17.0000 intended." *Coronis*, No.

16-10WC, slip op. at 5. The commissioner has also found that permitting parties to challenge the finality of a Form 22 agreement "would open the floodgates of litigation and result in a chaotic loss of certainty in the procedures" of the Department of Labor. *Catani v. A.J. Eckert Co.*, No. 28-95WC, slip op. at 5 (May 17, 1995). The commissioner's reasoning in these cases militates against the conclusion that Dr. Cyr's initial impairment rating was a material mistake of fact that warrants setting aside the Form 22. The opinion held by experts who subsequently evaluated claimant — that Dr. Cyr's initial rating method did not conform to the *AMA Guides* — is not a basis for determining that Dr. Cyr's initial rating was a material mistake of fact.[4]

¶ 17. ■ The differences between Dr. Banerjee's and Dr. Boucher's impairment ratings in 2010 and Dr. Cyr's impairment rating from 2003 are insufficient to serve as grounds for reopening the original order for compensation. An impairment rating is an expert opinion that derives from measurable data taken at a specific point in time, a person's symptoms at the time of the evaluation, and the medical evaluator's professional judgment. In the commissioner's words, an impairment rating is the result of a "process [that] combines objective, scientifically based data with a physician's clinical judgment to produce an estimate that reflects the severity of an individual's medical condition." While it is true that each impairment rating is the result of a standardized approach, an individual physician's own judgment plays a very significant role. *AMA Guides* at 18 ("Performing an impairment evaluation requires considerable medical expertise and judgment.").

¶ 18. ■ Dr. Banerjee and Dr. Boucher both acknowledged in their testimony before the superior court that physicians may be required to make estimates regarding impairment ratings. The

---

[4] Claimant relies upon certain decisions by the commissioner to show that forms can be reformed under Rule 17.0000. This reliance is misplaced because, while these cases may have allowed reformation, none of the claimed mistakes pertained to impairment ratings. Rather, the mistakes concerned discrete facts such as a mistaken calculation, *Nardone v. Johnson Controls, Inc.*, No. 39-94WC, slip op. at 2-3 (Oct. 12, 1995); the date of an injury, *Kelly v. Webster Corp.*, No. 08-97WC, slip op. at 4-7 (June 13, 1997); and the identity of a workers' compensation carrier, *Valley v. Orleans Cent. Supervisory Union*, No. 55-98WC, slip op. at 4-5, 7-8 (Sept. 15, 1998). In none of these cases did anyone challenge a physician's performance or judgment.

doctors also acknowledged that different doctors looking at the same claimant's medical records or data sets might come to different opinions as to permanent impairment. The difference between Dr. Cyr's impairment rating, on the one hand, and Dr. Banerjee's and Dr. Boucher's, on the other, may be due to at least three factors. First, Dr. Banerjee and Dr. Boucher used the ROM method while Dr. Cyr used the DRE method. Second, Dr. Banerjee and Dr. Boucher conducted their evaluations in 2010, whereas Dr. Cyr conducted his in 2003. Third, the individual evaluators may have exercised their clinical judgment in different ways. Neither party had credible evidence as to what claimant's impairment rating would have been had Dr. Cyr used the ROM method for his evaluation in 2003. Furthermore, the selection of a rating method itself is an exercise of clinical judgment that is rooted more in opinion than objective fact.

¶ 19. We conclude as a matter of law that the claimant in this case has failed to meet his burden of demonstrating a mistake of fact sufficient to require reformation of the approved Form 22. The alleged mistake in Dr. Cyr's rating method does not warrant modification of an approved Form 22 agreement pursuant to Rule 17. While we conclude here that Dr. Cyr's allegedly mistaken medical opinion is an insufficient basis for concluding that there has been a material mistake of fact, we decline to hold that an impairment rating can *never* be the basis for reforming a Form 22 agreement under the material-mistake-of-fact doctrine. We hold only that the doctrine is not available under these facts.

¶ 20. In light of this holding, we need not reach the question of whether the claim was barred by the statute of limitations.

IV.

¶ 21. ■ The workers' compensation statute entitles a prevailing claimant to reasonable attorney's fees if he prevails. 21 V.S.A. § 678(b). In this case, the superior court awarded claimant $30,623 in attorney's fees. That fee award was based on the court answering the first certified question before it — whether claimant was entitled to additional medical benefits referable to his June 2002 injury — partially in favor of claimant, and the second certified question — whether claimant was entitled to additional permanent partial disability benefits as a consequence of his June 2002 injury — in favor of claimant. Regarding the first certified question, the court ruled that claimant was entitled to payment of

ongoing medical expenses related to S-1 injuries, including his left leg and left foot pain, but not those related to L4-5 injuries. Although we have reversed the superior court's resolution of the second certified question, we have left undisturbed the court's resolution of the first certified question. Accordingly, the matter is remanded for the superior court to reassess its attorney's fee award in light of our opinion and claimant's partial success with respect to the first certified question.

*The superior court's order entitling claimant to additional permanent partial disability benefits is vacated and the matter is remanded to the superior court for entry of judgment in favor of the State on this issue. Insofar as claimant prevailed on the unappealed issue, the matter is remanded for the superior court to reassess its attorney's fee award in light of this Court's opinion and claimant's partial success.*