NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 93

No. 2016-416

| | |
|---|---|
| Lydia Diamond | Supreme Court |
| | |
| | On Appeal from |
| v. | Commissioner of Labor |
| | |
| Burlington Free Press | May Term, 2017 |

Anne M. Noonan, Commissioner

William B. Skiff, Burlington, for Plaintiff-Appellant.

J. Justin Sluka and Alycia M. Sanders of Ellis Boxer & Blake PLLC, Springfield, for Defendant-Appellee.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **ROBINSON, J.** This case requires us to determine whether a workers' compensation award of permanent partial disability (PPD) benefits based on damage to the C4-6 levels of claimant's cervical spine precludes a subsequent award of PPD benefits, more than six years later, for damage to the C3-4 levels of claimant's spine that arose, over time, from the same work injury. Claimant Lydia Diamond appeals the summary judgment decision of the Commissioner of the Department of Labor denying her claim for PPD benefits associated with the C3-4 levels of her spine. The Commissioner determined that claimant's request for the additional PPD benefits amounted to a request to modify the prior PPD award and was time-barred. We conclude, based on the specific language of the initial PPD award, that it did not purport to encompass injury to other levels of claimant's cervical spine beyond the C4-6 levels. Accordingly, claimant is not seeking to modify the prior PPD award but, rather, seeks PPD benefits for physical

damage not encompassed within a previous PPD award. Her claim is therefore timely, and we reverse and remand.

¶ 2. The following facts are undisputed in the summary judgment record. In April 2001, claimant was injured in a motor vehicle collision while delivering newspapers for employer. The crash exacerbated claimant's preexisting right carpal tunnel syndrome. She underwent right carpal tunnel release surgery in February 2002, and had a surgical release of her left carpal tunnel in January 2003.[1] After the surgeries, it became clear that claimant had unresolved neck pain relating to the work accident. Her doctor diagnosed disc herniations in her cervical spine and in September 2003 performed discectomies at the C5-6 and C6-7 levels of her cervical spine and a two-level cervical fusion at C4-C6.[2]

¶ 3. In March 2004, Dr. Verne Backus conducted an independent medical examination. He diagnosed claimant with "[t]wo-level severe cervical spondylosis with spinal stenosis and myelopathy status post two-level fusion" at discs C4-5 and C6, as well as bilateral carpal tunnel syndrome. Dr. Backus determined that claimant had reached maximum medical improvement insofar as her symptoms were stable and manageable from the neck surgery and there was currently no additional treatment that would substantially change her condition. He described her overall

---

[1] It is not entirely clear whether the left carpal tunnel damage was related to the work injury. The Commissioner's recitation of undisputed facts asserts that the left carpal tunnel surgery was unrelated to the work injury, which is consistent with the employer's statement of undisputed material facts in the summary judgment record. The Form 22 settlement agreement and PPD award provided for payment of PPD benefits based on a rating that included a 1% whole person impairment associated with claimant's left carpal tunnel injury. To the extent that there is a dispute about the relatedness of the left carpal tunnel injury, it is not germane to the issues before us on appeal.

[2] Although the record is not entirely clear, there does not appear to be any dispute between the parties about these facts. This description of the surgery corresponds to the summary in the surgeon's operative note, and was relied upon by the examiner who performed the independent medical evaluation upon which claimant's 2004 permanent partial disability award was based, as well as by the parties and the Commissioner. The text of the surgeon's operative note references excision of disc material from C4-5 and C5-6, but does not reference C6-C7, creating some ambiguity in the record. There is no dispute that the disc at C3-C4 was neither fused nor excised in the surgery. Any lack of clarity as noted above is accordingly immaterial to our analysis.

prognosis to be fair but noted that "[t]wo-level fusion does have some risk for future complications of cervical spine above or below this level or a pseudoarthrosis." He evaluated her permanent impairment according to the American Medical Association Guides to the Evaluation of Permanent Impairment, Fifth Edition (AMA Guides). Dr. Backus used the range-of-motion method to estimate claimant's impairment because claimant's surgery affected multiple levels of her cervical spine. He determined that she had a whole-person impairment rating of 22% for the spine injury, and an additional 1% impairment for the left upper extremity. He did not include claimant's right carpal tunnel syndrome in his impairment rating because permanent partial disability for that injury had already been awarded.

¶ 4.    In August 2004, claimant and employer entered into an Agreement for Permanent Partial Disability Compensation, also known as a "Form 22" agreement. The parties agreed that claimant suffered an accident while working for employer and that claimant "sustained the following injury: right carpal tunnel and cervical spine." The agreement explicitly stated that the PPD award was based on Dr. Backus' report and impairment ratings of 22% and 1%. The Commissioner approved the agreement.

¶ 5.    Several years later, claimant developed neck and arm pain that grew worse over time. A 2012 MRI revealed progressive cervical myelopathy with a large disc herniation at level C3-4, adjacent to the C4-6 fusion that had been performed in 2003. This was one of the areas Dr. Backus identified as having some risk for future complications. Claimant underwent surgery in April 2012 to repair the damage at C3-4.

¶ 6.    In November 2012, claimant notified employer of her continuing symptoms and the recent surgery. In March 2013, claimant filed a notice and application for a hearing before the Commissioner to determine whether the damage at C3-4 and the surgery to repair it was causally related to the 2001 work injury. Her surgeon opined that her progressive disease at level C3-4 was related to the previous fusion surgery she had in 2003.

3

¶ 7.     Meanwhile, claimant's 2012 surgery did not heal properly, and she underwent another surgery in November 2014.  The surgeon performed a bilateral C3-4 laminotomy and fusion of those discs.  Employer voluntarily paid for this surgery.

¶ 8.     In June 2015, Dr. George White conducted an independent medical examination of claimant and found that she had again reached end medical result.  He evaluated claimant's impairment using a combination of the diagnosis-related-estimate method and the range-of-motion method pursuant to the AMA Guidelines.  He determined that under either method, claimant had a 35% whole-person impairment.  Dr. White attributed twelve percentage points of this 35% to claimant's 2012 and 2014 surgeries.[3]

¶ 9.     In September 2015, claimant filed a claim for additional PPD benefits based on the additional impairment identified by Dr. White.  Employer denied her claim.  In March 2016, the Department issued an interim order directing employer to pay for the April 2012 fusion surgery, and the matter was referred to the formal hearing docket.  Employer did not contest that the 2012 and 2014 surgeries were reasonably necessary to treat claimant's work-related injuries, and does not challenge the Department's interim order requiring it to pay for claimant's medical expenses.  It did contest her claim for additional PPD benefits.  Employer moved for summary judgment with respect to the PPD issue, arguing that claimant sought to modify the 2004 PPD award and her claim was time-barred.  Claimant opposed employer's motion and filed her own cross-motion for summary judgment.

_____

[3] The record contains a discrepancy with respect to this fact.  The difference between Dr. White's 2015 cervical spine rating and Dr. Backus's rating in 2004 was thirteen percentage points. Citing this differential, claimant sought additional permanency of 13%.  Employer's statement of undisputed material facts recites that Dr. White attributed twelve percentage points of that rating to claimant's 2012 and 2014 surgeries.  The basis for employer's statement that Dr. White attributed twelve percentage points of the rating to the 2012 and 2014 surgeries is unclear. Claimant adopted employer's statement of undisputed material facts as her own, but also asserted that based on Dr. White's 35% whole person rating, she is due an additional 13% above the original 22% pursuant to the 2004 Form 22.  This discrepancy creates a factual dispute that must be resolved on remand.

4

¶ 10.    The Commissioner granted summary judgment to employer.  The Commissioner concluded that claimant was seeking to modify an award of PPD benefits that had been approved in 2004 and thus her claim was barred by 21 V.S.A. § 668, which states that an approved award may only be modified within six years of the date of the award.  The Commissioner noted that if claimant were "seeking a benefit that was not already the subject of an award, including a benefit stemming from a new injury or aggravation," then it would not be barred.

¶ 11.    We review a grant of summary judgment de novo, using the same standard as the Commissioner.  Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  V.R.C.P. 56.  We will defer to the Commissioner's construction of the Workers' Compensation Act unless there is a compelling indication of error.  Morin v. Essex Optical/The Hartford, 2005 VT 15, ¶ 4, 178 Vt. 29, 868 A.2d 729.  However, we will not affirm a decision that is unsupported by the findings or that reflects an "unjust or unreasonable interpretation of the law." Id.  The Worker's Compensation Act is a remedial statute, and we construe it liberally to allow benefits "unless the law is clear to the contrary."  St. Paul Fire & Marine Ins. Co. v. Surdam, 156 Vt. 585, 590, 595 A.2d 264, 266 (1991).

¶ 12.    The central issue in this case is whether claimant's 2015 claim for additional PPD benefits relating to her injury at C3-4 of her cervical spine is an attempt to modify the 2004 PPD award or is a distinct claim for benefits.  This case could potentially fall under either of these two frameworks, each subject to different limitations periods.  In order to determine which framework applies to this case, we consider the parties' approved Form 22 settlement agreement to determine what it did and did not purport to resolve.  Based on the language of the agreement as a whole, we conclude that claimant's claim is not a request for modification of the 2004 PPD award barred by the six-year statute of limitations applicable to modifications.[4]  We reject employer's argument

---

[4]  Employer does not dispute that if her claim is properly treated as a distinct claim for benefits rather than a modification, claimant's claim for additional PPD benefits was timely

5

that our holding upsets the balance between workers and employers built into the workers' compensation system.

¶ 13.    The 2004 PPD award arose from an approved Form 22 settlement agreement. The Workers' Compensation Act provides that an injured worker and an employer may enter into an agreement with regard to compensation payable under the Act. 21 V.S.A. § 662(a). The Commissioner has promulgated forms to be used for various types of settlement agreements. For example, the parties may enter into a "Form 16" compromise agreement that definitively settles specified types of claims for benefits, e.g., all claims for medical benefits, temporary total or temporary partial disability, permanent total or permanent partial disability, and/or vocational rehabilitation benefits. Or, as in this case, they can execute a Form 22 agreement for permanent partial or permanent total disability compensation.[5]  After the parties execute an agreement for permanent partial disability, they are required to file it with the Commissioner for review and approval. 21 V.S.A. § 662(a); Workers' Compensation Rules § 10.1800, Code of Vt. Rules 24 010 003, https://www.lexisnexis.com/hottopics/codeofvtrules/ [hereinafter Workers' Compensation Rules]. The agreement must be accompanied by the necessary supporting documentation, including "medical evidence establishing the date of end medical result and the extent of any permanent impairment and/or disability causally related to the compensable injury." Workers' Compensation Rules § 10.1810. The Commissioner is prohibited from approving a Form 22 agreement that lacks such supporting documentation. Id.

¶ 14.    Employer and the Commissioner view claimant's claim as an attempt to modify the 2004 Form 22 settlement agreement and PPD award, and claimant views it as a distinct claim for

_____

pursuant to Workers' Compensation Rule § 3.1700 insofar as claimant made the claim within six years of the accrual of the claim. In her decision below, the Commissioner noted that she filed her claim for additional PPD benefits less than four months after that claim arguably accrued.

[5]  The distinction between a Form 16 agreement and a Form 22 agreement is significant. The former expressly serves as a full and final settlement of a class or classes of benefits, such as medical benefits, temporary total disability benefits, or permanent partial disability benefits; the Form 22 agreement in this case does not contain such language.

6

benefits associated with consequences of the 2001 work injury that were not addressed in the 2004 PPD award.

¶ 15.  The grounds for modifying an approved Form 22 agreement are limited, and a party may not seek to modify an award more than six years after it is approved.  Once an agreement is approved by the Commissioner, it "shall be enforceable and subject to modification as provided by sections 668 and 675 of this title."  21 V.S.A. § 662(a).  Section 675 deals with enforcement and is not relevant here.  Section 668, titled "Modification of awards," provides as follows:

> Upon the Commissioner's own motion or upon the application of any party in interest upon the ground of a change in the conditions, or whenever doubts have arisen as to the jurisdiction of the Commissioner at the time the petition was presented, the Commissioner may at any time within six years of the date of award review any award by giving at least six days' notice thereof to the parties personally, or to the attorneys appearing in the cause. On such review, the Commissioner may make an order ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in this chapter. . . .

21 V.S.A. § 668.  The Workers' Compensation Rules likewise permit the Commissioner to modify an approved award only in very limited circumstances: "Once approved, a duly executed [Form 22] Agreement for Permanent Partial or Permanent Total Disability Compensation constitutes a binding and enforceable contract.  Absent evidence of fraud or material mistake of fact, the parties will be deemed to have waived their right to contest the material portions thereof."  Workers' Compensation Rules § 10.1820; see Marshall v. State, 2015 VT 47A, ¶ 16, 199 Vt. 295, 124 A.3d 435 ("A party seeking to set aside an approved Form 22 must meet a very high burden under [the Workers' Compensation Rules].").  And, as noted above, a party may only seek to modify an approved Form 22 settlement agreement for permanent partial disability within six years of the date of that award.  21 V.S.A. § 668.

¶ 16.  On the other hand, a Form 22 PPD settlement agreement and award is only binding as to the matters actually concluded in that agreement.  A Form 22 agreement approved by the Commissioner is "binding on the parties as to the agreement's express terms."  Therieau v.

7

Specialty Paperboard, No. 33-05WC, slip op. at 2 (June 24, 2005), http://labor.vermont.gov/wordpress/wp-content/uploads//C-07603TherieauAll.pdf [https://perma.cc/6L4Q-WUXY]; see also Lushima v. Cathedral Square Corp., No. 38-09WC, slip op. at 6 (Sept. 29, 2009), http://labor.vermont.gov/wordpress/wp-content/uploads//LushimaDecision-1.pdf [https://perma.cc/X46V-MMF3] (stating that approved Form 22 is considered to "represent a final determination of any dispute as to its contents").  As the Commissioner has recognized, a Form 22 agreement "cannot be read to foreclose or waive any claim not expressly addressed in the agreement."  Therieau, slip op. at 2.

¶ 17.   The workers' compensation statute and rules contemplate successive claims for different benefits arising from a single work injury.  See 21 V.S.A. § 660(a) ("Proceedings to initiate a claim for a work-related injury pursuant to this chapter may not be commenced after three years from the date of injury.  This section shall not be construed to limit subsequent claims for benefits stemming from a timely filed work-related injury claim."); Workers' Compensation Rules § 3.1700 (requiring that subsequent claims for benefits stemming from a timely filed claim "shall be filed within six years of the date on which they accrue").

¶ 18.   The Commissioner has recognized in a previous decision that a subsequent claim for additional permanent partial disability benefits stemming from a timely filed work-related injury is different from a § 668 modification, and is subject to a different limitations period.  See Hoisington v. Ingersoll Elec., No. 52-09WC, slip op. at 8 (Dec. 28, 2009), http://labor.vermont.gov/wordpress/wp-content/uploads//HoisingtonMSJ.pdf [https://perma.cc/GM8H-HU9U]. In that case, Hoisington underwent shoulder surgery after injuring her right shoulder and neck while working for her employer.  Following the surgery, the Commissioner approved a Form 22 agreement finding that Hoisington had a 16% whole-person impairment stemming from her right shoulder injury.  The agreement did not address Hoisington's neck injury.  Hoisington continued to suffer shoulder and neck pain and was eventually diagnosed with cervical disc disease, for which she had several surgeries.  Eight years later, she filed a claim

8

for additional benefits seeking permanent total disability benefits due to her shoulder and neck injuries, or in the alternative, additional permanent partial disability benefits for the neck injuries. The Commissioner treated both claims as subsequent claims for benefits stemming from a timely filed work-related injury claim under 21 V.S.A. § 660(a). Id., slip op. at 8. The Commissioner concluded that both of the claimant's claims were timely because they accrued less than six years before she filed them. Id.

¶ 19.    In order to determine whether claimant's 2015 claim for additional PPD benefits was a request to modify, we must evaluate the scope of the 2004 Form 22 settlement agreement and award to determine what it did and did not purport to resolve.    Employer does not argue that the 2004 PPD award precluded any subsequent claims for PPD benefits outside the scope of the 2004 agreement, but argues that the agreement bars further claims for benefits associated with claimant's cervical spine. Indeed, prior to the 2004 PPD award associated with claimant's cervical fusion at C4-6, claimant was paid PPD benefits for her right upper extremity injury arising from the exacerbation of her pre-existing right carpal tunnel syndrome; employer did not suggest that that PPD award precluded claimant's subsequent claim for additional PPD benefits following her 2003 cervical spine surgery. We therefore must examine the 2004 Form 22 agreement to see if it addresses the subject matter of claimant's 2015 claim and thereby forecloses her from seeking the additional compensation through a distinct claim for benefits.[6]

¶ 20.    We conclude that the 2004 PPD award did not purport to address damage to claimant's cervical C3-4 disc. The Form 22 agreement signed by the parties in 2004 states that claimant sustained injuries to her "right carpal tunnel and cervical spine." Upon first glance, this would seem to support employer's position. However, the agreement also expressly states that the

---

[6] In their briefing, the parties debate the extent to which the 2004 PPD award should be construed as a contract between the parties versus an agency order or award. We need not decide whether and under what circumstances this distinction might be meaningful to our review of an approved settlement agreement. In this case, our analysis would be the same; in discerning the scope of the award—or agreement—we consider the language of the document as a whole with a background understanding of the purpose and structure of the workers' compensation statute.

impairment rating is based on Dr. Backus' report. The medical report is a material portion of the Form 22 agreement. See Coronis v. Granger N., Inc., No. 16–10WC, slip op. at 5 (Apr. 27, 2010), http://labor.vermont.gov/wordpress/wp-content/uploads//CoronisMSJ.pdf [https://perma.cc/YJ4C-XVJ5] ("[T]he medical documentation that supports an impairment rating is as much a 'material portion' of the Form 22 as the rating itself."); Workers' Compensation Rules § 10.1810 (prohibiting Commissioner from approving agreement without accompanying medical report). The term "cervical spine" therefore must be interpreted consistently with the contents of the medical report, which attributes the 22% impairment rating to claimant's injuries and fusion surgery at levels C4-6. Although Dr. Backus warned that claimant's two-level fusion surgery carried some risk of future complications in the cervical spine above or below the fused levels, there is no evidence that claimant actually experienced complications in the adjacent levels in 2004. The 2004 impairment rating was based solely on her C4-6 injuries and fusion. Her subsequent injury, surgeries, and impairment at C3-4 are outside the scope of the original agreement. For this reason, we find that claimant did not waive her claim for benefits for this later-manifesting aspect of her work injury by signing the Form 22 agreement, and her claim is not barred by the limitations period applicable to modifications.

¶ 21. We reject employer's argument that because the 2004 Form 22 agreement referred to an injury to claimant's "cervical spine," she is foreclosed from seeking any additional benefits related to any injury to her spine, or to her cervical spine. The Commissioner apparently adopted this interpretation without discussion. If claimant were seeking additional benefits based on the same C4-6 injury, we might agree. However, claimant's 2015 claim was based on newly manifesting damage to a different level of her spine. Although it was causally related to the earlier injury, claimant did not have this impairment in 2004 and could not have obtained benefits based upon it. Barring the claim based merely on the generic reference to claimant's "cervical spine" ignores a material portion of the agreement—namely, the medical report upon which it was based—and is the sort of "medieval literalism" we have warned against in previous workers'

compensation cases. <u>Hartman v. Ouellette Plumbing & Heating Corp.</u>, 146 Vt. 443, 446, 507 A.2d 952, 954 (1985) (quotation omitted). Such an interpretation conflicts with the remedial purpose of the Worker's Compensation Act. See <u>Surdam</u>, 156 Vt. at 590, 595 A.2d at 266.

¶ 22. The decisions relied upon by the Commissioner in reaching her decision in employer's favor are inapplicable to the facts of this case because they involved explicit attempts to reform an approved agreement. See <u>Greenia v. Marriott Corp.</u>, No. 46-01WC (Jan. 29, 2002), slip op. at 5, amended by No. 46A-01WC (Mar. 13, 2002), http://labor.vermont.gov/wordpress/wp-content/uploads//B25212GreeniaAll.pdf [https://perma.cc/2H9Y-9RDF] (rejecting request for additional permanent partial disability benefits where claimant did not file new claim but instead sought to reopen Form 22 agreement on basis of "newly discovered evidence," namely, post-agreement examinations of her spine showing greater impairment); <u>Marshall</u>, 2015 VT 47A, ¶ 18 (holding that alleged mistake in doctor's rating method was insufficient reason to reopen Form 22 under § 668). Neither <u>Greenia</u> nor <u>Marshall</u> involved distinct consequences from a work injury that arose after the initial PPD award.

¶ 23. Employer's argument that allowing claimant to proceed with her 2015 claim for PPD benefits will lead to potentially endless liability for employers overstates the significance of this decision, underestimates the limitations on ongoing liability for additional PPD benefits that are built into the system, and overestimates the finality associated with workers' compensation claims generally.

¶ 24. On the first point, the parties do not dispute the framework we have described above. Employer does not argue that <u>Hoisington</u> was wrongly decided, or that an approved Form 22 settlement agreement and award precludes any subsequent claims for PPD benefits, even for matters outside of the scope of the Form 22 settlement. This decision turns instead on our construction of a specific settlement agreement and award, and its implications extend no further than the specific facts on which our decision is based.

11

¶ 25. Second, the Workers' Compensation Act contains a number of protections designed to prevent the scenario feared by employer. Claims for benefits associated with a timely filed workers' compensation claim must be filed within six years of when they accrue. 21 V.S.A. § 660(a); Workers' Compensation Rules § 3.1700. Further, a claimant seeking subsequent benefits stemming from a timely filed worker's compensation claim must prove that they are entitled to those benefits. In particular, where a subsequent claim for benefits arises from later-manifesting damage to parts of the body not encompassed in the prior Form 22 settlement agreement, the claimant must prove that the damage is causally related to the workplace injury. This is no easy burden. 21 V.S.A. § 660(a); see, e.g., Heller v. Bast & Rood Architects, No. 2013-217, 2014 WL 3714883, at *2 (Vt. Mar. 28, 2014) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo13-217.pdf (affirming denial of benefits where causal relationship between claimant's work injury and continued progression of disease was "too attenuated"). Finally, PPD payments are limited in duration and amount. 21 V.S.A. § 648. These and other provisions protect employers from unlimited and indeterminate liability.

¶ 26. Lastly, employer overstates the protection from indeterminate and ongoing liability that a Form 22 agreement could provide—even if we adopted employer's construction of this particular Form 22 award. In contrast to tort laws, the workers' compensation statutes contemplate extended exposure to liability for employers and their insurance carriers. Except in the rare case in which the parties agree to a Form 16 settlement that terminates the employer's obligation to pay medical expenses arising from the work injury and the Commissioner approves the agreement, an employer's exposure to liability to pay these expenses is open-ended, limited only by the diminishing inferences of causality as time passes. In this case, employer does not challenge its obligation to pay for the 2012 and 2014 surgeries and associated medical care. Likewise, later-manifesting injuries and treatment can support successive claims for temporary total disability benefits and delayed claims for vocational rehabilitation benefits. See 21 V.S.A. § 650(c)

12

(providing that when temporary disability occurs in separate intervals each resulting from original injury, compensation shall be adjusted to reflect any increases in wages); Dobson v. Ethan Allen Interiors, Inc., No. 18-15WC, slip op. at 6 (Aug. 21, 2015), http://labor.vermont.gov/wordpress/wp-content/uploads/Dobson.pdf [https://perma.cc/E5Y3-2GV6] ("Even after attaining the point of end medical result, an injured worker's condition might still worsen to the point where additional curative treatment becomes necessary, and along with it an additional period of temporary disability."). If the Commissioner has approved a Form 22 agreement for PPD benefits, an injured worker may still subsequently pursue a claim for permanent total disability that manifests over time. Therieau, slip op. at 3 ("The Form 22 does not address either permanent total disability o[r] vocational rehabilitation; therefore, claims for those benefits could be made even after a Form 22 is signed, as long as the claim is made within the applicable statute of limitations period."). In this context, the argument that our interpretation of this particular Form 22 agreement will upset the balance between the remedial goals of the workers' compensation statute and the goal of finality is unpersuasive.

¶ 27. For the above reasons, we vacate the Commissioner's award of summary judgment to employer. Claimant is entitled to pursue her claim for PPD benefits. We do not enter judgment for claimant because we conclude the record is not undisputed with respect to the portion of claimant's PPD as assessed in 2015—35% of the whole person—that is attributable to the later-manifesting C3-4 impairment as opposed to the prior impairment for which PPD benefits were previously awarded.

Reversed and remanded for calculation of additional permanent partial disability benefits.

FOR THE COURT:

_____

Associate Justice

13